Larned
v.
Trustees of
Syracuse.

LARNED *vs.* THE TRUSTEES OF THE VILLAGE OF
SYRACUSE.

*Construction of the by-laws of a village regulating wharves and basins on the
Erie canal.*

ERROR from the Onondaga common pleas. The trustees
of the village of Syracuse prosecuted Larned for a violation
of one of the ordinances of the village, and recovered a judg-
ment for a penalty of $15 in a justice's court. Larned ap-
pealed to the Onondaga common pleas, where the cause was
again tried, and a recovery again had. The ordinance for
a violation of which the suit was brought was passed 19th
June, 1827, and is in these words : "Be it ordained by the
trustees of the village of Syracuse, that from and after the
publication of this ordinance, no boat or raft shall be permit-
ted to lay *against or near to the south bank of the basin in the
public square* for more than 24 hours during any one week,
under the penalty of $5 upon the owner or master thereof
for each offence ; and in case the same shall not be remov-
ed, the said master or owner shall forfeit the additional pen-
alty of $2 for every 12 hours that the same shall continue
over and above the 24 hours aforesaid, to be sued for and
recovered as by a subsisting ordinance is provided." The
basin referred to was formed by widening the Great Western
Canal in the village of Syracuse 35 feet, for the distance of
200 feet, so that its width at this place is 75 feet. The ex-
cavation is made on the south side of the canal. The canal
was widened by individuals, in 1819, from its original width,
which was 40 feet, to 60 feet ; and in the spring of 1827, by
a further excavation, its width was increased to 75 feet. The
last excavation was made by permission of *one* of the canal
commissioners, granted on the application of one of the trus-
tees of the village in behalf of the trustees, and is in these
words: "Permission is hereby given to M. D. Burnet (the
trustees applying) and others to widen the Erie Canal in the
village of Syracuse," &c. By the act of *incorporation* of the

village of Syracuse, *Laws of* 1825, *p.* 222, § 3, the trustees of the village are authorized to make and ordain by-laws, rules and regulations relative to *wharves* and *basins* in the village. Larned was the master of a canal boat, and entered the basin with his boat in November, 1827, in the evening. On the same night the canal froze over, and navigation was suspended for several days. The ice however was broken, and Larned proceeded with his boat to Salina, and returned with her to the basin, where she remained several weeks. She was stationed about ten feet from the south shore. There was some contrariety of evidence as to the fact whether the boat was at any time 24 hours in the basin, when she was not frozen in. It also appeared that about 24 hours were usually occupied in unloading and loading a boat. A variety of objections were taken to the recovery, which were all overruled. The court charged the jury that if they were satisfied that the boat was *in any part of the excavation* made since the first construction of the canal, it was in the *basin;* if it lay within the basin, although it did not touch the bank, it was against the south bank of the basin; if it lay in the basin more than 24 hours in any one week, although not at one continued time, it was a breach of the ordinance in obstructing the use of the basin; and if it lay in the basin more than 84 hours in one week, the trustees were entitled to recover $15. The defendant excepted. The jury found for the plaintiffs for $15 debt and $\frac{6}{100}$ damages, on which a judgment was entered.

*M. T. Reynolds,* for plaintiff in error.

*C. P. Kirkland,* for defendants in error.

*By the Court,* SUTHERLAND, J. The court below erred in their construction of the ordinance of the village, for a violation of which this action was brought. They charged the jury, " that if the boat lay in the basin more than 24 hours in any one week, although not at one continued time, it was a breach of the ordinance in obstructing the use of the basin; and if it lay in the basin more than 84 hours in one week, then the appellees were entitled to recover $15." If this be

UTICA,
July, 1830.

Larned
v.
Trustees of
Syracuse.

the true construction, no one boat can discharge and take in a cargo within the basin in the village of Syracuse more than once in any one week; for it appears from the evidence that it requires about 24 hours for a boat to load and unload an ordinary cargo. An owner of a mill, therefore, situated so near the village that he could conveniently transport and unload four or five loads of flour in a week, would be compelled to change his boat each trip, or subject himself to the penalties of this law. Such could not have been intended to be its effect, and is not, we think, its fair construction. It enacts that no boat or raft shall be permitted to lay against or near the south bank of the basin in the public square for more than 24 hours during any one week, under the penalty of five dollars upon the owner or master thereof for each offence; and in case the same shall not be removed, the said master or owner shall forfeit the additional penalty of $2 for every twelve hours that the same shall continue, over and above the 24 hours aforesaid. It is obvious when the whole ordinance is considered, that the penalty is not incurred, unless the boat continues in the basin 24 hours in succession. The phraseology used, of more than 24 hours *in any one week,* was probably intended to guard against an evasion of the ordinance, by a temporary and colorable removal, or immediate return to the basin. This would break the succession, and if the term *successive hours* had been used without any further limitation, a boat might in effect remain in the basin the whole time, without violating the terms of the law. The object of the ordinance is to promote the convenience of the public, by compelling boats as fast as they are unladen to leave the basin and give place to others that may wish to enter for the same purpose; and if the removal is *bona fide,* the boat may again return and unload within the week without violating the true intent and spirit of the ordinance. I should question the power of this corporation arbitrarily to prescribe the portion of a week or a month, or any other time during which a boat might remain in the basin. It would be against public policy, and restrictive of the freedom of trade, without any adequate or justifiable object. It is not unreasonable to prohibit boats from remaining in the basin at any one time

longer than is necessary, with ordinary diligence, to discharge and take in their cargo. This was the only legitimate object of the law, and it will be fully effected by the construction which we give to it.

It is very clear from the terms of the latter clause of the ordinance that the cumulative penalty of $2 is not incurred unless the boat remains twelve hours in succession, after the 24. It is given, in case the boat *shall not be removed*, for every 12 hours that the same shall continue over and above the 24 hours. If it is removed in good faith, and not for the mere purpose of evading the law, the additional penalty does not attach.

The misdirection upon this point was material, as the evidence was contradictory upon the point whether the boat remained in the basin for more than 24 *successive* hours in any one week after the ice was broken up ; and the verdict might have been otherwise if the question had been left to the jury under a correct exposition of the true construction of the ordinance.

The court were also incorrect in charging the jury that if the boat lay any where in the basin, although it did not touch the bank, it was against the south bank of the basin, within the meaning of the ordinance. This was erroneous, but it was not material in this case, as there is no dispute as to the fact where the boat did lie. It was within 10 feet of the bank, and if that position is *near* the bank within the spirit of the ordinance, then the defendant below sustained no injury on that ground. I apprehend any position would be *near* the bank which would prevent another boat from approaching it for the purpose of loading or unloading. The ordinance is to be construed with a view to its cardinal object—the promotion of the public convenience in the loading and discharge of boats within the basin.

The written permission of Mr. Seymour, one of the canal commissioners, fully authorized the trustees to construct this basin. The act of April 13th, 1820, empowers *one* of the acting canal commissioners to give such permission ; and when the act incorporating the village of Syracuse, *Laws of* 1826, *p.* 220, § 1, gives to the trustees the power of con-

structing wharves or basins for boats, under the direction and with the consent of *the canal commissioners*, it did not intend to make the consent of *all* the commissioners necessary, but to make it the duty of the trustees to act in this respect in subserviency to the paramount authority of the state to regulate and control the whole line of the canal. The permission of one of the canal commissioners is evidence of the consent of all, within the meaning of this part of the charter.

There can be no doubt that the permission, though given to one of the trustees, was intended for the benefit of the inhabitants of the village generally, and authorized the trustees to construct the basin. The application was made on behalf of the trustees, showing that it was to be a village, and not an individual operation. The judgment below must however be reversed for the error in the charge of the court which was first considered, and a venire *de novo* must issue from the court below.